**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheena Marie Presley-Carrillo,<br><br>        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>        Defendant. | No. CV-14-00742-PHX-JAT<br><br>**ORDER** |

Plaintiff Sheena Marie Presley-Carrillo appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal. (Doc. 38).

**I. Background**

    **A. Procedural Background**

On August 30, 2010, Plaintiff filed an application for supplemental security income, alleging a disability onset date of August 15, 2004. (R. 157). The Commissioner denied benefits on January 20, 2011, (R. 73), and Plaintiff requested reconsideration, (R. 101). Plaintiff was again denied on April 7, 2011, (R. 84), and she appealed.

On July 12, 2012, Administrative Law Judge ("ALJ") Earl C. Cates, Jr. held a hearing on Plaintiff's claim. (R. 37-72). At the hearing, Plaintiff amended her disability onset date to August 30, 2010. (R. 177). Following the ALJ's unfavorable decision, (R. 17-35), Plaintiff appealed to the Appeals Council. After the Appeals Council denied Plaintiff's request for review, (R. 1), Plaintiff filed an appeal with this Court. (Docs. 1,

25). Plaintiff argues that the ALJ erred in rejecting the opinions of Plaintiff's treating psychologist and examining psychologist, rejecting Plaintiff's testimony of her symptoms, assessing Plaintiff's residual functional capacity, and in relying on medical-vocational guidelines to find Plaintiff to be able to work in the national economy. (Doc. 38 at 1-3).

### B. Medical Background

The Court will very briefly state the major points of Plaintiff's medical history, which is more thoroughly recounted in the administrative record. Plaintiff has a long history of poly-substance abuse, beginning with childhood use of marijuana and alcohol and later expanding to methamphetamine. (R. 402, 412, 436). Plaintiff has a history of arrests for thefts to obtain drug money, and was incarcerated for two years. (R. 412). After her release from prison, Plaintiff was diagnosed with polysubstance dependence, substance-induced psychotic disorder with delusions, and borderline personality disorder. (R. 322).

## II. Disability

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the

most she can still do despite all her impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ applied the five-step sequential evaluation process using Plaintiff's amended alleged onset date of August 30, 2010. (R. 222). The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since her amended alleged onset date. (R. 24). The ALJ then found Plaintiff to have the following severe impairments: psychosis and personality disorder. (R. 22). Under step three, the ALJ noted that none of these impairments met or medically equaled one of the listed impairments that would result in a finding of disability. (R. 22-24). The

ALJ then determined that Plaintiff's residual functional capacity ("RFC") was the ability to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retains the ability to perform simple, repetitive, unskilled work on a sustained basis." (R. 24). Under step four, the ALJ determined that Plaintiff is capable of performing her past work as a cashier. (R. 29). The ALJ found Plaintiff is not disabled. (R. 30).

### D. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III. The Opinions of Treating Physicians

### A. Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's

1 record. A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631.

### 1. Substantial Evidence

Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### 2. Discounting of a Treating Physician's Opinion

If the ALJ determines that a treating physician's opinion is inconsistent with

- 6 -

substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(c).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830).

### 3.     Opinions on Disability

Finally, "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Thus, even if a treating physician's opinion is controlling, it does not necessarily lead to a finding of disability. See *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (rejecting a treating physician's opinion of disability).

### B.     Discussion

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of Plaintiff's treating physician Dr. Mateus and examining physician Dr. Van Eerd. (Doc. 38 at 19).

### 1. Dr. Mateus

Dr. Mateus was Plaintiff's treating psychiatrist from February 2011 through June 2012. (R. 744-802). In February 2012, Dr. Mateus assessed Plaintiff as having a mild impairment (defined as not affecting Plaintiff's ability to function) in the areas of relating to other people, daily activities, personal habits, and constriction of personal interests. (R. 517). Dr. Mateus assessed Plaintiff as having moderate limitations (affecting but not precluding Plaintiff's ability to function) in carrying out instructions, responding appropriately to supervision, responding appropriately to coworkers, and performing complex or varied tasks. (R. 518). Dr. Mateus assessed Plaintiff as having moderately severe limitations (seriously affecting Plaintiff's ability to function) in responding to customary work pressures and completing a normal workday/workweek. (R. 517-18).

In June 2012, Dr. Mateus completed an updated assessment in which she assessed mild limitations with the exceptions of responding appropriately to supervision and coworkers, responding to customary work pressure, which she assessed as moderately severe, and in the areas of performing complex or varied tasks and completing a normal workday/workweek, which she assessed as moderate. (R. 519-20).

The ALJ rejected Dr. Mateus' opinion on the grounds that Dr. Mateus included no objective or clinical findings to support her assertions, and her opinion contradicted her own treatment notes, "which show of relatively unremarkable mental status examinations and global assessment of functioning ratings consistently at 70, which denotes mild symptoms." (R. 28).

Plaintiff first argues that Dr. Mateus' failure to include additional comments on the assessment forms does not excuse the ALJ from the requirement that his rejection of Dr. Mateus' opinion be for clear and convincing reasons. (Doc. 38 at 20). Plaintiff correctly cites *Smolen* for this proposition, (*id.*), and the Court agrees. *See Smolen*, 80 F.3d at 1288. Nevertheless, the ALJ's clear and convincing reason for rejecting Dr. Mateus' opinion was the contradiction between the assessment form opinions and Dr. Mateus' own treatment notes, to which the Court now turns.

1       Plaintiff contends there was no contradiction between Dr. Mateus' assessment of
2  Plaintiff's work capacity and her treatment notes. (Doc. 38 at 21). Plaintiff cites Ninth
3  Circuit case law emphasizing that an ALJ cannot cherry-pick the best days of a
4  claimant's cyclical mental health condition to support a finding that a claimant can work.
5  (Doc. 38 at 21-22) (citing *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014)).
6  But the ALJ did not cherry-pick portions of Dr. Mateus' treatment notes to support a
7  finding of non-disability. Rather, the ALJ specifically noted that Plaintiff's "global
8  assessment of functioning ratings" ("GAF" ratings) were "consistently at 70." (R. 28).
9  Thus, although Plaintiff's symptoms may have waxed and waned over time, Dr. Mateus'
10 consistently assessed Plaintiff's GAF rating at 70.

11      The Ninth Circuit case cited by Plaintiff supports the ALJ's reliance upon the
12 consistency of Plaintiff's GAF rating. In *Garrison*, the Ninth Circuit stated:

> While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable "clear and convincing" standard. Here, the record reveals a tortuous path: some symptoms came and went (e.g., paranoia, hallucinations, pseudo-seizures), some symptoms persisted nearly the whole period (e.g., insomnia, bouts of depression and mania), and still other symptoms appear to have remained a constant source of impairment (e.g., intense anxiety). Garrison's diagnoses of PTSD and bipolar disorder remained constant across all treatment records, and her GAF score consistently hovered around 50 to 55.

759 F.3d at 1018. In that case, the Ninth Circuit relied upon a consistent GAF score as assessing the claimant's overall ability to function. There, because, in part, the claimant's GAF score remained at 50-55 despite peaks and valleys in her symptoms (such as hallucinations), the Court held that the ALJ erred in concluding that a "few short-lived periods of temporary improvement" undermined the claimant's testimony. *Id.*

   In the present case, Plaintiff's GAF score remained constant at 70 throughout Dr. Mateus' treatment records. (R. 745, 749, 751, 753, 755, 757, 759, 761, 765, 767, 769, 771, 773, 778, 780, 782, 784, 786, 788, 790, 792, 797, 800, 802). Thus, Plaintiff's uniform GAF score encompassed the natural variations in Plaintiff's symptoms and

reflects her overall ability to function. Furthermore, a review of Dr. Mateus' treatment notes shows that, with limited exceptions, Plaintiff was consistently doing well. *See* (R. 744-802). To the extent the treatment notes document downward variations in Plaintiff's symptoms, these are concentrated earlier in time and are thus less probative of Plaintiff's current abilities. *Compare* (R. 799, 801, 796-97, 787) (noting issues from February 23, 2011 through May 6, 2011), *with* (R. 744-84) (consistently doing well from June 3, 2011 through June 12, 2012). Thus, the ALJ correctly cited Dr. Mateus's "relatively unremarkable mental status examinations" as a clear and convincing reason for discounting her opinion. (R. 28).

Plaintiff nonetheless argues that GAF scores are unreliable as a measure of a claimant's ability to perform work. (Doc. 38 at 24; Doc. 30 at 7). In *Garrison*, the Ninth Circuit did not reject a GAF score as indicative of a claimant's capabilities, *see* 759 F.3d at 1018, and the Court sees no reason for rejecting Plaintiff's GAF score of 70. Moreover, even if the ALJ had erred in relying upon Plaintiff's GAF score, Dr. Mateus' treatment notes were by themselves clear and convincing evidence that Plaintiff suffered only mild symptoms of mental illness, at least beginning in June 2011. The ALJ did not err in rejecting the opinion of Dr. Mateus.

### 2. Dr. Van Eerd

Dr. Van Eerd is a psychologist who examined Plaintiff in December 2010. (R. 434). Dr. Van Eerd diagnosed Plaintiff with psychosis, not otherwise specified; mood disorder, not otherwise specified; polysubstance dependence; and personality disorder. (R. 437). He opined that Plaintiff was mild to moderately limited in understanding simple work instructions and severely limited with more complex instructions, severely limited in "maintaining routine requiring multiple repetition," and had a "poor ability to make work decisions on a consistent basis with poor ability to manage stress." (R. 438). Dr. Van Eerd also found Plaintiff had moderate limitations with "suggestion of delusion interfering with interaction," and "severe limitations" regarding adaptation. (R. 438).

The ALJ assigned little weight to Dr. Van Eerd's opinion, stating that the opinion

was "quite vague and imprecise since Dr. Van Eerd did not define the terms 'mild', 'moderate', or 'severe'." (R. 27). The ALJ also stated that Dr. Van Eerd's opinion was not consistent with the medical evidence of record, and that Dr. Van Eerd "did not have the opportunity to review any recent medical records or the hearing record." (R. 27).

Plaintiff argues that the ALJ erred in citing Dr. Van Eerd's lack of review of the hearing record or recent medical records as a basis for rejecting his opinion. (Doc. 38 at 27). Plaintiff argues that "[i]f accepted, that rationale would invalidate all pre-hearing consultative examination results." (*Id.*) But the temporal limitation of Dr. Van Eerd's opinion was a clear and convincing reason for rejecting that opinion. Dr. Van Eerd rendered his opinion in December 2010, and thus he had no opportunity to observe Plaintiff after that date. Dr. Mateus' treatment records show a dramatic improvement in Plaintiff's mental health following May 2011. (R. 744-84). Thus, the ALJ did not err in pointing out this limitation in Dr. Van Eerd's opinion.

Thus, the ALJ offered a clear and convincing reason for rejecting Dr. Van Eerd's opinion: Dr. Van Eerd's opinion predated a change in Plaintiff's condition. The ALJ cited as much when he referred to "recent medical records" and specifically cited Dr. Mateus' treatment records on the next page of his decision. (R. 27-28). The fact that more recent medical records were not available to Dr. Van Eerd does not mean that Dr. Van Eerd's reviewing process was flawed. However, the fact that more recent medical records show an improvement in Plaintiff's condition means that the usefulness of his opinion is diminished. The ALJ did not err in rejecting Dr. Van Eerd's opinion on the basis that Dr. Van Eerd did not have the opportunity to review Plaintiff's more recent medical records.

The Court need not address the balance of Plaintiff's arguments regarding Dr. Van Eerd because even if the ALJ erred in classifying Dr. Van Eerd's opinion as "vague and imprecise," the ALJ could have properly rejected the opinion solely on the basis of Dr. Van Eerd having no opportunity to review more recent medical records.

**V.     Plaintiff's Reported Symptoms**

    **A.     Legal Standard**

> An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–36. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))
>
>     Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala,* 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014).

    **B.     Discussion**

Plaintiff reported her symptoms as an inability to focus and feelings of confusion

1  that limited her ability to work. (R. 254). Plaintiff argues the ALJ failed to provide clear
2  and convincing reasons for discounting Plaintiff's testimony. (Doc. 38 at 29). The ALJ
3  rejected Plaintiff's testimony, finding Plaintiff to be not credible for numerous reasons.
4  First, the ALJ noted that the objective and clinical findings were not consistent with
5  Plaintiff's testimony regarding her limitations. (R. 25). As the ALJ noted, Plaintiff sought
6  mental health services upon her release from prison, and on initial intake was found to
7  have intact memory, fair judgment, and no indication of focus problems. (R. 412).

8  The ALJ cited treatment records that show when Plaintiff maintained compliance
9  with her treatment and medications, her symptoms were stable and her outlook was
10 positive. (R. 25); *see also* (R. 441, 744-84). The ALJ also cited Plaintiff's consistent GAF
11 score of 70, with one provider rating her at 60, which still reflects only moderate
12 symptoms. (R. 25, 421, 442-47, 745, 749, 751, 753, 755, 757, 759, 761, 765, 767, 769,
13 771, 773, 778, 780, 782, 784, 786, 788, 790, 792, 797, 800, 802). These treatment records
14 also showed that Plaintiff was proud of herself, working part-time, doing well, and had
15 good social support. (R. 750).

16 The ALJ also cited Plaintiff's inconsistent statements regarding her substance
17 abuse as a basis for compromising Planitiff's credibility. (R. 25-26). At the ALJ hearing,
18 Plaintiff testified that she had been sober for 1.5 years since March 2011, and other than
19 that relapse, she had been sober ever since she left prison. (R. 55). The ALJ cited
20 Plaintiff's contradictory treatment record from July 22, 2011, at which point Plaintiff had
21 reported being clean for only five weeks. (R. 775). Plaintiff's treatment records also show
22 that Plaintiff told her psychologist in September 2011 that she drinks 1-2 beers on the
23 weekend. (R. 25, 768). The ALJ found these inconsistent statements undermined
24 Plaintiff's credibility. (R. 25).

25 Additionally, the ALJ noted that although the record contains evidence of inpatient
26 psychiatric treatment, (R. 492), this treatment was because Plaintiff had stopped taking
27 her medications; worsened symptoms as a result of failure to take medications does not
28 equate to disability. (R. 26). The ALJ found these facts diminished Plaintiff's credibility

as well because Plaintiff's treatment was necessitated by either her substance abuse or her refusal to take her medication. (R. 26).

Furthermore, the ALJ noted that Plaintiff's description of her daily activities was inconsistent with her alleged limitations. (R. 26). Plaintiff reported that she takes mental health classes, searches for jobs, enrolls in a GED program, helps with her child and performs community service on weekends, and attends church services. (R. 211). She reported hobbies of walking, listening to music and watching TV, going to classes, community service, and church on a regular basis. (R. 214). The ALJ additionally noted that Plaintiff has expressed statements such as she was "uncertain if she desires to return to work." (R. 26, 317). The ALJ also pointed out that Plaintiff had told her treatment provider that she felt confident in her ability to get a job but felt her felony charges were a barrier. (R. 26, 449). Plaintiff reported losing her last job due to drug use. (R. 412).

In addition to the foregoing, the ALJ also noted that Plaintiff's credibility was undermined by the inconsistencies revealed by her examination with Dr. House. (R. 27). Dr. House noted Plaintiff had a "tendency to give contradictory responses" and appeared to be evasive and deceptive during the examination. (R. 318). Dr. House also noted that Plaintiff initially denied consuming alcohol but then stated that she drinks regularly. (R. 319). The ALJ found these inconsistencies to further undermine Plaintiff's credibility. (R. 27).

Plaintiff argues that the ALJ improperly inserted his own opinion to conclude that the objective findings did not support a finding of disability. (Doc. 38 at 30). But the ALJ did no such thing. As the Court has explained, the ALJ relied upon the treatment notes of examining and treating physicians to conclude that Plaintiff was not disabled. The ALJ based his determination on the medical opinions expressed in those treatment notes. The ALJ's assessment of Plaintiff's credibility is a separate matter. With respect to Plaintiff's credibility, Plaintiff argues that it is error to discount the severity of a claimant's symptoms based on a lack of objective evidence. (Doc. 38 at 30). But the ALJ discounted the severity of Plaintiff's symptoms based on her history of inconsistent statements. The

ALJ did not rely upon objective findings to discount Plaintiff's testimony. Rather, Plaintiff undermined her own credibility when she repeatedly made inconsistent statements and alleged daily activities that do not correspond with her claims of disabling impairments. The ALJ did not err in finding Plaintiff to be not credible regarding her abilities. Accordingly, the ALJ did not err in rejecting Plaintiff's testimony regarding her symptoms.

**VI.   Plaintiff's RFC**

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. (Doc. 38 at 34-35). The ALJ determined that Plaintiff has mild restriction in her activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. (R. 23). The ALJ found that treatment records showed Plaintiff could perform the activities of daily living independently, and she generally gets along well with others. (R. 23). The ALJ cited to treatment records that show Plaintiff's concentration was typically rated as fair. (R. 23); *see also, e.g.*, (R. 441, 764, 766, 768). Although the ALJ recognized that these limitations, which the ALJ found in the context of evaluating whether Plaintiff's mental impairments met the severe impairment criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, were not a residual functional capacity assessment, the ALJ used these limitations in later determining Plaintiff's RFC. (R. 22-23). As shown in the Court's analysis of the ALJ's rejection of medical opinions and Plaintiff's reported symptoms, the ALJ carefully and specifically evaluated the record evidence to determine that Plaintiff's mental impairments were mild and "not significant enough to preclude all employment." (R. 28).

Plaintiff argues the ALJ erred in determining Plaintiff's RFC as the ability to "perform simple, repetitive, unskilled work on a sustained basis." (Doc. 38 at 34). Plaintiff cites authorities for the proposition that "failure to meet or equal a listed mental impairment" cannot lead to the assumption that the claimant has the capacity "to do at least unskilled work." (*Id.*) (citing SSR 85-15). Plaintiff contends that the ALJ failed to consider "other limitations that would impact the capacity to sustain work activities, such

as difficulties with memory, responding to supervisors and coworkers, and responding to customary work pressures." (*Id.* at 35). But the ALJ specifically considered these limitations. He noted that examinations consistently found Plaintiff to be "cooperative, alert, and oriented with good eye contact, appropriate affect, euthymic mood, logical associations, non-psychotic thought contact, intact memory, and fair concentration, intellect, insight, and judgment." (R. 25). He noted that Plaintiff generally got along with others and reported that she was doing well at work. (R. 25) (citing R. 764). The ALJ also noted that Plaintiff's self-reported daily activities required mental capabilities and social interaction similar to that needed for obtaining and maintaining employment. (R. 26). Although Plaintiff argues that the ALJ impermissibly provided his own opinion regarding Plaintiff's RFC instead of relying upon the medical evaluations in the record, (Doc. 38 at 35), the ALJ did not rely on his own opinion in assessing Plaintiff's RFC. Rather, the ALJ assessed Plaintiff's RFC based upon medical evidence in the record, including the treatment notes of Plaintiff's treating physicians. The ALJ cited specific exhibits in the record that supported his RFC assessment. (R. 25-28). Thus, the ALJ did not make this RFC determination based on his own opinion of Plaintiff's capacities but rather based on the substantial record evidence to which he cited.

Furthermore, Plaintiff testified at the ALJ hearing that she does not have her GED and she currently works part-time as a cleaner but her hours are limited. (R. 48, 50-51). Plaintiff testified that she has looked for more substantial employment but has found it difficult to find work because of her criminal history. (R. 51-52). The fact that Plaintiff may be practically unemployable does not mean that she is incapable of working.[1] Substantial evidence supports the ALJ's assessment of Plaintiff's RFC, and the ALJ did not err in finding Plaintiff to be capable of unskilled work.

---

[1] Plaintiff argues that the ALJ erred because the ALJ did not ask the vocational expert testifying at the hearing whether Plaintiff's limitations regarding concentration, persistence, or pace would affect Plaintiff's ability to sustain work activities. (Doc. 38 at 34 n.26). Because the ALJ found Plaintiff capable of performing her past work as a cashier, the absence of vocational expert testimony regarding Plaintiff's ability to perform other work existing in the national economy does not undermine the ALJ's finding.

### VII. Medical-Vocational Guidelines

Plaintiff argues that the ALJ erred in relying upon the Medical-Vocational Guidelines to conclude in the alternative that Plaintiff could perform a number of other jobs in the national economy besides her past work as a cashier. (Doc. 38 at 37). The ALJ found Plaintiff was capable of performing her past work as a cashier, but in the alternative relied upon the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2) to find Plaintiff to be capable of performing other jobs. (R. 29-30).

The Court need not address Plaintiff's argument because the ALJ did not err in finding Plaintiff to be capable of performing her past work as a cashier. The ALJ noted that the vocational expert testified at the hearing that Plaintiff's work as a cashier was unskilled, light work. (R. 29); *see also* (R. 54). Under this classification, working as a cashier was within Plaintiff's RFC. (R. 29). Moreover, the ALJ noted that Plaintiff testified that she lost her job as a cashier because of her drug use, and not because of her mental health. (R. 29); *see also* (R. 412) (notes indicating Plaintiff lost her cashier job because she "made 'friends' with drug users who came into the store and they began bringing her drugs while she worked which eventually led to her termination").

Plaintiff also testified that she was sober and working part-time, and could work full-time doing janitorial work or as a parking lot cashier if she stayed on her medication. (R. 66-67). She testified that her current medication works well. (R. 68). The ALJ did not err in finding Plaintiff to be capable of working as a cashier. Accordingly, any error in the ALJ's alternative finding that Plaintiff was capable of performing other jobs is harmless error not warranting reversal. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### VIII. Conclusion

The ALJ did not err in finding Plaintiff to be not disabled.

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

1 | accordingly. The judgment will serve as the mandate of this Court.

2 | Dated this 24th day of September, 2015.

James A. Teilborg
Senior United States District Judge